**MONON RAILROAD, an Indiana corporation, Plaintiff,**

v.

**BROTHERHOOD OF RAILROAD TRAINMEN and B. W. Fern and S. Vander Hei, et al., Defendants.**

**No. 63 C 218.**

United States District Court
N. D. Illinois, E. D.
Feb. 11, 1963.

Fred H. Daugherty and Winston, Strawn, Smith & Patterson, Chicago, Ill., for plaintiff.

John J. Naughton and Edward B. Henslee, Jr., and Henslee, Monek & Henslee, Chicago, Ill., for defendants.

PERRY, District Judge.

This cause has come on to be heard upon the motion of the defendants to dissolve the restraining order heretofore entered herein which by its terms expires this day and upon the motion of plaintiff for a preliminary injunction.

Time within which the defendants are required to answer has not expired and they have not filed a written answer. However, by counsel in open court they have answered and denied all material allegations other than those passed upon in civil action No. IP63–C–47 in the United States District Court for the Southern District of Indiana by the Honorable William E. Steckler, Chief Judge of that District, wherein the same parties were therein also respectively plaintiff and defendants. For the purpose of this suit both parties admit the truth of the Findings of Fact by that Court.

The plaintiff introduced exhibits as evidence and also testimony, and the defendants cross-examined herein. Each of the parties made opening statements, including statements and admissions of fact that this court has considered.

The court finds the facts herein to be as hereinafter set forth:

### FINDINGS OF FACT

1. Plaintiff Monon Railroad is an Indiana corporation engaged in furnishing rail transportation between Chicago, Illinois, via Indianapolis, Indiana and Louisville, Kentucky, and intermediate cities and towns, and is the only such carrier servicing many of them. It is a carrier within the meaning of that term as defined in Section 1 of the Railway Labor Act, 45 U.S.C. § 151.

2. Defendant Brotherhood of Railroad Trainmen is a labor organization and is an unincorporated association doing business in this judicial district, and is sued in its common name and is a representative of all of its members who constitute a class so numerous as to make it impossible to bring them all before this court.

3. Defendant B. W. Fern is a Vice President of the Brotherhood residing in

Chicago, Illinois. He is sued individually as a member and officer of defendant Brotherhood and as a representative of the members of the Brotherhood who are so numerous as to make it impossible to bring them all before this court.

4. Defendant S. Vander Hei is a Vice President of the Brotherhood residing in Chicago, Illinois. He is sued individually as a member and officer of defendant Brotherhood and as representative of the members of the Brotherhood who are so numerous as to make it impossible to bring them all before this court.

5. This action arises under the acts of Congress regulating commerce, including Part 1 of the Interstate Commerce Act, 49 U.S.C. § 1 et seq. and the Railway Labor Act, 45 U.S.C. § 151 et seq. The amount in controversy is in excess of $10,000, and this court has jurisdiction under Sections 1331 and 1337, 28 U.S.C.

6. On or about January 26, 1963 defendants caused to be served upon plaintiff the following telegram:

"DE LAA084 RX PD=LAFAY-ETTE IND 26 554P EST=V C HALL, Director of Personnel, Report Delivery=

"Phone G17–1362 611 North 26 St Lafayette Ind.

"In support of B. of R.T. May 9, 1962 formal section six notice for indemnifying insurance covering deadheading employees. The general grievance committee in executive session this date, with the approval of the president of the Brotherhood of Railroad Trainmen decided on a peaceful withdrawal of their members from the service of the Monon Railroad at 1159 PM Saturday, January 26 1963.

"Garland F. Brown Sr Deputy President Room 413 Van Orman Fowler Hotel, Lafayette Ind."

7. Defendants did strike against plaintiff at 11:59 P.M., Saturday, January 26, 1963, and said strike continued until 7:00 P.M. January 27, 1963, at which time it was temporarily restrained by an order of the United States District Court for the Southern District of Indiana, Indianapolis Division.

8. There is no dispute over the facts in this cause. Counsel for the parties disagree only over whether "deadheading" as alleged has been proved. The differences between counsel are purely semantic. Plaintiff alleges in the Complaint and defendants admit through their counsel in his opening statement and throughout his argument that employees of the Monon Railroad of different crafts and classes are required by Monon Railroad to ride on various vehicles upon public highways in connection with their employment and that they and their dependants are not protected by a form of public liability insurance while so travelling. This controversy has continued since notice of a proposed change in compensation was made by defendants on May 9, 1962 and served upon plaintiff on May 11, 1962. There is no issue upon that fact that the parties failed to reach any agreement. Each of the parties rejected arbitration; mediation was terminated, and each of the parties was free to resort to self help or economic pressure under the law prior to the bringing of this suit. In the interim the parties reached a substantial agreement upon the amount of coverage of the employees of plaintiff represented by defendants as follows:

"The aforesaid policy shall cover all employees in the craft or class represented by the Brotherhood of Railroad Trainmen when required by the Monon Railroad to ride in or on any vehicle operated over a public thoroughfare and each employee shall be protected by a public liability policy on which the plaintiff will pay the premiums, said policy to provide the following benefits: (1) $100,000 for accidental death or dismemberment; (2) $3,000 blanket accident medical reimbursement, and (3) 80% of the insured employee's salary from the Monon to a maximum $100 per week for a maximum of three (3) years, and further that

said policy shall be in a reputable insurance company."

The only issue remaining between the parties at trial time concerned the writing of the same into a new rule. The plaintiff refused to agree to a change of rule making the foregoing a binding obligation, taking the position that a final decision should await the overall settlement upon a national basis between all railroads and all labor unions, and demanded a right of cancellation upon a thirty (30) day notice. The defendants demanded a firm change of the rule without delay. The plaintiff made an offer in open court to carry out the foregoing, conditioned upon a no strike pledge. The defendants refused to accept any such conditions.

9. Both parties agreed in open court that the controversy herein is identical with that brought by the same plaintiff and the same defendants in the United States District Court for the Southern District of Indiana, Indianapolis Division (Civil Action No. IP63–C–47), entitled Monon Railroad vs. Brotherhood of Railroad Trainmen, et al., except that in this cause the plaintiff has made the additional following charges and seeks relief thereon.

These charges are:

(A) "On November 2, 1959, substantially all of the nation's railroads, including the Monon, served on the labor organizations representing their operating employees, including defendant Brotherhood, certain notices under Section 6 of the Railway Labor Act, 45 U.S.C. § 156, seeking extensive changes in the work rules and pay structures of the operating employees. On or about November 2, 1959 the Monon authorized the Eastern Carriers Conference Committee to represent it in either regional or national conferences. On or about September 7, 1960, at the request of the operating Brotherhoods, including defendant, substantially all of the nation's railroads, including the Monon agreed to waive local handling of the issues raised in the operating Brotherhood's notice of September 7 1960, to permit joint handling of those issues on a national level growing out of the carriers' notices of November 2, 1959. The various proceedings between the railroads, including Monon and the operating Brotherhoods involving these national issues, are hereinafter referred to as the "National Case". The National Case involved an attempt by the Carriers, including plaintiff, to negotiate comprehensive changes in the work rules affecting rates of pay, hours and working conditions both generally and as to deadheading (see Appendix B to defendant's Brotherhood's complaint in No. 62 C 1451 against plaintiff and numerous other railroads, Part II. A. 5.)

(B) "The proposed contract changes designated by plaintiff's notice of November 2, 1959 and the Brotherhood's notice of September 7, 1960 have been the subject of extensive study and negotiation on the part of bargaining teams representing the railroads, including plaintiff, on one side and the operating railroad unions, including defendant, on the other.

(C) "These nationally handled contract changes were the subject of a hearing before the Honorable J. Sam Perry in cause 62 C 1451 in the United States District Court, Northern District of Illinois, Eastern Division. In that case Judge Perry held that the railroads, including this plaintiff, had every legal right to institute the contract changes proposed in the carriers' November 2, 1959 notice. However, at the request of the plaintiffs in that case, including this plaintiff, Judge Perry issued a restraining order pending appeal under Rule 62(c) of the Federal Rules of Civil Procedure. If Judge Perry had not entered this restraining order to maintain the status quo, the carriers, including plaintiff, barring intervention by a presidentially appointed emergency fact-finding board, would have put into effect their proposed contract changes of November 2, 1959, and the defendant, Brotherhood's contract proposals which form the basis of this scheduled strike would have become mute. (sic)

(D) "The Brotherhood's efforts to negotiate locally with the plaintiff on issues which are now the subject of industry wide negotiation by the appointed national representatives of plaintiff and defendant, and the strike action by the Brotherhood in support of these efforts, are an unlawful attempt to use two separate bargaining representatives to bargain over the same subject matter and to disrupt the orderly procedures of collective bargaining provided in Sections 2 and 6 of the Railway Labor Act. Defendants' Section 6 notice of May 9, 1962, proposing a change in work rules regarding deadheading over public thoroughfares may not be considered separate and apart from the carriers' various detailed proposals and the counterproposals of defendant and other unions in the National Case.

(E) "On August 10, 1962 Judge Perry entered an Order in cause No. 62 C 1451 which enjoined and restrained the defendants in that case, including the Monon Railroad, from putting into effect an extensive revision of the work rules applicable to members of defendant Brotherhood and other railroad unions.

(F) "Judge Perry's Ninth Finding of Fact stated, 'The rates of pay, rules, and working conditions which the Promulgations of August 6, 1962, would abrogate or modify have been agreed to by the plaintiffs and the railroads on a continuing basis through collective bargaining. The granting of an injunction pending appeal will temporarily continue in effect such rates of pay, rules and working conditions agreed to until the Court of Appeals can review the legality of the threat to put into effect the terms of said promulgation.'

(G) "Judge Perry's Fourth Conclusion of Law stated, 'The equities in favor of maintaining the status quo during the pendency of plaintiffs' appeal substantially outweigh the equities against maintaining the status quo.'

(H) "The threatened strike would disrupt the status quo, would frustrate the purposes of Judge Perry's Order, and would be in violation of defendants' duty to exert every reasonable effort to avoid interruption of interstate commerce.

(I) "Unless this Court exercises its inherent powers in equity to enjoin the strike now threatened by defendants and protect the integrity of its Order of August 10, 1962, the public and the plaintiff will suffer irreparable injury for which there is no adequate remedy at law.

(J) "Plaintiff shows that defendants' strike and strike threat are an interference with plaintiff's right to designate its bargaining representatives free from coercion in violation of Section 2, third of the Railway Labor Act, and contrary to the policy expressed in Sections 3 and 4(b) of the Norris-LaGuardia Act."

10. The United States District Court for the Southern District of Indiana, Indianapolis Division, entered a final decree in Civil Action No. IP63–C–7 on February 5, 1963. The Court made the following findings of fact:

" * * * the Court finds that the matter involved herein constitutes a 'major dispute' under the Railway Labor Act, 45 U.S.C. Section 151, et seq.

"The Court further finds that both Plaintiff and Defendant declined the profer of arbitration made by the National Mediation Board, pursuant to the Railway Labor Act."

The Court thereupon entered the following decree:

"IT IS THEREFORE ORDERED AND DECREED as follows:

"1. That the Temporary Restraining Order heretofore issued, be, and the same hereby is, vacated and set aside.

"2. That the Amended Complaint be, and it hereby is, dismissed.

"3. That the Plaintiff's request for a Preliminary Injunction be, and the same hereby is, denied.

"4. That the Defendants be awarded their costs taxed and expended.

"The grounds for this ORDER are the Court's conclusions of law that:

"1. The Court is without jurisdiction in the premises by reason of the provisions of the Norris-La-Guardia Act, 29 U.S.C. Section 101, et seq.

"2. This matter constitutes a 'major dispute' under the Railway Labor Act.

"3. That this dispute involves wages, rules and working conditions as defined in the Railway Labor Act.

"4. Plaintiff has failed to perfect its right to injunctive relief for the reason that it refused the profer of arbitration under the Railway Labor Act.

"5. The Court further concludes that the Defendants Motion in all other respects is without legal merit."

11. This court adopts all of the foregoing findings of fact, conclusions of law and decree insofar as the Complaint and the relief herein sought are identical with that before said United States District Court in the Southern District of Indiana, but specifically retains and assumes jurisdiction over such part of the Complaint herein as was not before said Court. Not only does this court adopt said findings of fact and conclusions of law and decree on the subject matter that was before said Indiana court because it is at law bound to do so under the long established principle of res adjudicata, but because this court is of the view that said findings of fact, conclusions of law and final decree are the same that this court would have made upon the record before that court.

12. The additional charges and cause for relief hereinabove set forth were never formally presented to the said United States District Court in Indiana. The undisputed record here reveals that after the hearing was completed but before the decree hereinabove mentioned was in fact signed by the Honorable William E. Steckler, Judge of said court, there was a conference held between the parties by said Judge Steckler in an attempt to settle the controversy between the parties in an amicable manner. At that conference for the first time the fact was mentioned that the plaintiff and defendants were both parties to the litigation in this court that is now relied upon by the plaintiff herein. The Court took no action upon such information and made no findings of fact or conclusions of law upon those issues presently before this court and did not purport to consider any of them.

13. On November 2, 1959, substantially all of the nation's railroads, including Monon, served on the labor organizations representing their operating employees, hereinafter referred to as the operating brotherhoods, including defendant Brotherhood, certain Notices under Section 6 of the Railway Labor Act, 45 U.S.C. § 156, seeking extensive changes in the work rules and pay structures of the operating employees.

14. On or about September 7, 1960, at the request of the operating brotherhoods, including defendant Brotherhood of Railroad Trainmen, substantially all of the nation's railroads, including Monon, agreed to waive local handling of the issues raised in the operating brotherhoods' notices of September 7, 1960, to permit joint handling of those issues on a national level with the issues being handled on a national level growing out of the carriers' notices of November 2, 1959; the various proceedings between the railroads, including Monon, and the operating brotherhoods, including defendant Brotherhood of Railroad Trainmen, involving these national issues are hereinafter referred to as the National Case.

15. On October 17, 1960 the defendant Brotherhood of Railroad Trainmen and other railroad labor organizations entered into an agreement with regional conference committees representing the nation's railroads establishing a Presidential Study Commission, and also entered into an agreement stating the understanding between the parties that neither the findings nor the recommenda-

tions of the Commission provided for by the agreement of October 17, 1960 should be binding upon the parties or either of them.

16. On November 1, 1960, the President of the United States, in Executive Order 10891, created a special Presidential Commission to investigate and inquire into the issues raised by the notices of the railroads, including Monon, and the operating brotherhoods, including defendant Brotherhood of Railroad Trainmen, with the objective of making a report to the President, including findings and recommendations with respect to the controversy.

17. On February 28, 1962 the said Presidential Study Commission issued its report.

18. The defendant Brotherhood of Railroad Trainmen, with other labor organizations, entered into negotiations in the National Case with the Carriers' Conference Committees following the report of the Presidential Railroad Commission from April 2, 1962 until May 17, 1962 when such negotiations were terminated.

19. On May 21, 1962 the defendant Brotherhood of Railroad Trainmen, with other railroad labor organizations, made application in the National Case for the services of the National Mediation Board, and the said Mediation Board docketed the case as A–6700. Mediation conferences were conducted from May 25, 1962 until June 22, 1962 when they were terminated. By letter of July 16, 1962, the Mediation Board formally terminated its services in the dispute arising out of the railroads proposals of November 2, 1959, the organizations' counterproposal of September 7, 1960, as supplemented on April 7, 1961, and the report of the Presidential Study Commission.

20. The issues in the National Case arising out of the carriers' notices of November 2, 1959, and the organizations' notices of September 7, 1960, as supplemented on April 7, 1961, have been and still are being handled on a national level by Monon and defendants.

21. The issues over payment of insurance premiums on public liability insurance for the employees by the plaintiff for its employees who use public means of transportation other than plaintiff's trains, such as automobiles, buses and taxicabs, have been found by the United States District Court in Indiana, and ipso facto by this court, to involve wages, rules and working conditions and to be a major labor dispute. This court further finds that such dispute is a part of the same general dispute over wages, rules and working conditions as is being negotiated by the parties hereto on a national level and a part of the same general subject matter out of which arises the litigation involving the same parties hereto as hereinafter set forth, but does not find that the parties are barred from bargaining upon a local level while said national bargaining or negotiating is taking place.

22. In Brotherhood of Locomotive Engineers, et al. vs. Baltimore & Ohio Railroad Co., et al., No. 62 C 1451, defendant Brotherhood of Railroad Trainmen and other labor organizations participating in the National Case brought suit against the railroads party to the National Case to enjoin the railroads, including Monon, from putting into effect, on August 16, 1962, the rules changes proposed by Notices of November 2, 1959.

23. This court ruled, in said cause No. 62 C 1451, that the railroad defendants there, including Monon, could lawfully and in compliance with the Railway Labor Act put into effect on August 16, 1962, the rules changes proposed by their notices dated November 2, 1959; but on application of the plaintiffs there, including the Brotherhood of Railroad Trainmen which is a defendant here, this court granted an injunction pending appeal under Rule 62(c), Federal Rules of Civil Procedure, to maintain the status quo to permit consideration by the Court of Appeals of the question or questions of law therein involved, said Brotherhood

of Locomotive Engineers v. Baltimore & O. R. Co., 7 Cir., 310 F.2d 503 Court of Appeals has affirmed this court's decision and said injunction has been extended by the Supreme Court of the United States pending a petition to said Supreme Court for certiorari.

24. The undisputed and agreed evidence before the court in this case is that defendants had informed the plaintiff that a strike would be called on February 6, 1963 before the filing of the complaint herein and that it was in fact called for 6:00 P.M. on that date and was withdrawn after a restraining order was issued by this court, and except for such order, which expires by its terms at 3:00 P.M. on February 11, 1963, the strike would be in progress and that unless prevented by an injunction of this court a strike of the employees represented by defendants will become effective at 3:00 P.M., February 11, 1963.

25. The evidence clearly demonstrates that a number of Indiana cities and communities will be without freight transportation with no alternate service to rely on; that this is a critical time for shipment involving poultry and other agricultural and industrial shipments; that in the event of such strike there will be irreparable damage to the public, which is not here represented and was not represented in the United States District Court in Indiana; that the only remedy the public has in this cause is an injunction by this court restraining defendants from calling said strike.

26. This court has jurisdiction of the parties hereto and of the subject matter herein.

## CONCLUSIONS OF LAW

1. The defendants herein by joining as plaintiffs in case No. 62 C 1451 wherein they sought to enjoin the Monon Railroad, along with other railroads, from enforcing their proposed work rules, went outside the framework of the National Railway Labor Act while so doing, and more particularly by obtaining an injunction in said cause after the case was de-

cided against them while they appealed said adverse decision.

2. The defendants herein can not claim the protection of a court of equity in restraining the plaintiff from the use of self help while it uses its own power of self help against the plaintiff to change the "status quo" pending appeal.

3. The defendants herein can not invoke the provisions of the Norris-LaGuardia Act, 29 U.S.C. § 101 et seq., while the aforesaid injunction against the plaintiff and the order of this court maintaining the status quo of the parties is in effect upon the motion of defendants under Rule 62(c), Federal Rules of Civil Procedure, pending appeal.

4. The court has jurisdiction of the parties and of the subject matter herein with respect to the complaint of the plaintiff for relief pending the enforcement of the injunction in case No. 62 C 1451 in this court.

5. That part of the Complaint herein heard before the United States District Court for the Southern District of Indiana, Indianapolis Division, is res adjudicata.

6. The plaintiff is not estopped by the verdict of the court in the United States District Court for the Southern District of Indiana, Indianapolis Division, for failure to present all matters in that court concerning the prior and existing order of this court in case No. 62 C 1451. In an ordinary controversy where only the interest of the parties are concerned the rule generally applies. But not so in a case where the interest of the public is so vitally concerned and where the public is not represented as is the case in the cause at bar.

7. In this case where the parties to the cause were already bound by a decree of this court, now on appeal, and involving the same subject matter, the rule of comity of courts in all likelihood restrained the District Court in Indiana from going into the subject matter heard by this court, especially since no such issues were brought before it officially

by either of the parties. The court is to be commended for its strict conformity to this rule.

8. The plaintiff is entitled to relief during the pendency of the aforesaid injunction against it, and until such time as a mandate has issued to this court in said case No. 62 C 1451, and more particularly since plaintiff has offered in open court to do equity and provide the insurance without being bound to a perpetual agreement.

## DECREE

This cause having come on for hearing, and Findings of Fact and Conclusions of Law being entered simultaneously herewith wherein it is found by the court that all of the facts and issues have been presented on issues joined, it is unnecessary that this court enter a preliminary decree herein. Therefore this court being fully advised in the premises does herein issue and enter a final decree as hereinafter set forth.

It is ORDERED, ADJUDGED and DECREED from and upon the facts found in the Findings of Fact herein and founded upon the law as concluded in the Conclusions of Law made herein that the motion of the defendants to dissolve the restraining order and the motion of the defendants for judgment at the conclusion of plaintiff's case and the taking of all evidence be and the same are hereby denied; that the plaintiff shall have judgment and the injunction as prayed against the defendants so long as the injunction against plaintiff Monon Railroad is in full force and effect pending appeal in cause numbered 62 C 1451 entitled Brotherhood of Locomotive Engineers, et al. vs. The Baltimore & Ohio Railroad Company, et al., and in which cause the said Plaintiff Monon Railroad, a corporation, together with other railroads, upon the motion of defendant Brotherhood of Railroad Trainmen, together with other railroad employee unions, are restrained from putting into operation proposed work rules pursuant to notices they have been served under Section Six (6) of the National Railway Labor Act, provided further, however, that the plaintiff Monon Railroad shall place in effect forthwith on this day before 3:00 P.M. an application for an immediate binder of a public liability policy and agreement to pay the premiums upon such policy providing as follows: The aforesaid policy shall cover all employees in the craft or class represented by the Brotherhood of Railroad Trainmen when required by the Monon Railroad to ride in or on any vehicle operated over a public thoroughfare and said policy shall provide the following benefits: (1) $100,000 for accidental death or dismemberment; (2) $3,000 blanket accident medical reimbursement, and (3) eighty (80%) per cent of the insured employee's salary from the Monon to a maximum $100 per week for a maximum of three (3) years; said policy not to be cancelled until thirty (30) days after his Decree may by its terms become inoperative unless the employees of said Monon Railroad withdraw peacefully from the employment of the Monon Railroad, or strike upon the issue involved herein; and further provided that after the expiration of the terms of this Decree said policy shall not be cancelled without a thirty (30) day notice unless the employees represented by said Brotherhood of Railroad Trainmen shall strike over the issues in this cause, in which case the Monon Railroad shall be entitled to cancel said policy simultaneously with such strike. This provision is not intended to interfere with lawful cessation of work by said employees on other issues.

In order that all parties clearly understand the terms hereof.

It is ORDERED, ADJUDGED and DECREED that when, as and if this court shall receive a mandate in the aforesaid case numbered 62 C 1451 dissolving the injunction issued by this court pending appeal wherein the Monon Railroad is enjoined from putting new work rules into effect, on that day and simultaneously with the execution by this court of such mandate, the Decree entered herein whereby the defend-

ants are enjoined shall automatically be dissolved and shall be and become null, void and unenforceable from that day forward.

It is, therefore, ORDERED, ADJUDGED and DECREED that the defendants Brotherhood of Railroad Trainmen, B. W. Fern, S. Vander Hei, et al., individually and as officers of the Brotherhood of Railroad Trainmen and each of them, their officers, agents, employees, attorneys and all others acting in concert or in participation with them are hereby enjoined and restrained for the time and upon the conditions hereinabove recited from

(a) Calling, conducting, ordering, authorizing, starting, instigating, inducing, continuing or permitting any strike, slow-down, walkout, sit-down strike, or work stoppage, on plaintiff's railroad or any portion thereof;

(b) Picketing or bannering the premises of plaintiff used in the conduct of its railroad operations;

(c) Preventing, or attempting to prevent, by any kind of coercion, force, threats, enticement, intimidation, or promises, any of plaintiff's officers, agents, employees, representatives and others having business, or employment, or other peaceable relations with plaintiff, from entering, remaining on or leaving said premises freely and without restraint;

(d) In any manner obstructing, impeding, delaying, tampering or interfering with the delivery, loading, unloading, dispatch, movement, repair, conditioning or care of any of plaintiff's rolling stock, engines, cars, trains, or any of the contents thereof, or in any other manner interrupting the operation of plaintiff's railroad.

It is further ORDERED, ADJUDGED and DECREED that each party shall bear its own costs and that this Decree shall in no way be taken to infer that the parties may not of their own volition bargain on a local or national basis, but rather that neither shall resort to self help or economic pressure while the

aforesaid injunction in case Numbered 62 C 1451 remains in full force and effect, it having been the intention of the court in entering that decree that the enforcement of contract demands by self help would remain in "status quo" during the time the railroads were enjoined from placing into effect their proposed rules.